IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-01254-RPM-MEH

AARON SPATZIANI,

    Plaintiff,

v.

CORRECTIONS CORP. OF AMERICA, a Tenn. corp.,
RICHARD SMELSER, in his official and individual capacities,
KENNETH BAYLER, in his official and individual capacities, and
DAVID SACHETTE, in his official and individual capacities.

    Defendants.

---

**RECOMMENDATION ON MOTION TO ENFORCE SETTLEMENT AGREEMENT
(FILED UNDER SEAL)**[1]

---

Pending before the Court is Defendants' Motion to Enforce Settlement Agreement [filed January 20, 2009; docket #61]. Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C. Colo. LCivR 72.1.C, the motion has been referred to this Court for recommendation [docket #64]. The Court held an evidentiary hearing on this matter on February 5, 2009. For the reasons stated herein, the Court recommends that Defendants' motion be **granted**.

**I.    Background**

Plaintiff, an incarcerated person, initiated this action on June 14, 2007, alleging that Defendants committed tortious acts and violated his constitutional rights when he was injured during the cleaning and maintenance of a "jointer" located in the correctional facility workshop. Following an order of reference to the magistrate judge to convene a settlement conference, the conference was

---

[1] On January 21, 2009, the District Court granted Defendants' unopposed motion to seal the Material Terms of Settlement Agreement at issue here [docket #65]. Because this recommendation necessarily discusses the content of the sealed document, as well as discussions made pursuant to Fed. R. Evid. 408, the Court has filed the recommendation under seal as well.

scheduled for, and took place, on December 17, 2008. Counsel for the parties appeared in person, and Plaintiff, who was and is still an incarcerated person, appeared by telephone, as did Defendants' representative. At the conference, the parties reached an agreement and counsel, on behalf of their respective clients, executed an agreement titled Material Terms of Settlement Agreement ("Material Terms"), which is the subject of the pending motion. *See* docket #63. This Court set a deadline for filing dismissal papers on or before January 9, 2009, then granted Plaintiff's unopposed request for an extension of the deadline to January 23, 2009.

On January 20, 2009, the Defendants filed this motion to enforce the Material Terms upon learning that the Plaintiff refused to execute a final settlement agreement in this matter. This Court held an evidentiary hearing[2] on February 5, 2009, at which Defendants presented arguments and testimony (by the Plaintiff) in support of their motion. The Plaintiff argued that the final settlement agreement presented to him did not reflect the agreement made at the settlement conference and, therefore, stated that he no longer wishes to settle the case but prefers to proceed to trial.

Based upon the testimony presented at the hearing and the Court's own file, the Court makes the following findings of fact:

1. The Plaintiff and his counsel were present at the settlement conference held December 17, 2008; the Plaintiff appeared by telephone and his counsel (two attorneys) appeared in person. Defendants also appeared through counsel.

2. The Plaintiff testified that he granted his counsel the authority to act on his behalf during the settlement conference.[3]

---

[2]Typically, where material facts concerning the existence or terms of an agreement to settle are in dispute, the parties are allowed an evidentiary hearing. *United States v. Hardage*, 982 F.2d 1491, 1496 (10th Cir. 1993).

[3]As a general proposition, a compromise entered into by an attorney is not binding on his or her client in the absence of express authority. *Griego v. Kokkeler*, 543 P.2d 729, 730 (Colo. App.

3. Plaintiff's counsel discussed and explained the material terms of the settlement with Plaintiff during the conference.

4. In her discussions with Plaintiff, Plaintiff's counsel received the authority to settle the case under the terms set forth in the Material Terms, including the dollar amount.

5. Counsel for the Plaintiff and counsel for Defendants executed the Material Terms on behalf of their clients at the settlement conference. *See* docket #63.

6. Under the terms of the Material Terms, the parties did not agree to include a confidentiality clause in the final settlement agreement.[4]

7. Under the terms of the Material Terms, the parties agreed to a clause containing no admission of liability by any of the parties.

8. Two days after the conference, the Plaintiff had a telephone conversation with his counsel during which time he did not revoke his authority to settle the matter.

9. Days later, upon receiving a copy of a proposed, more comprehensive "final" settlement agreement, the Plaintiff was upset to see that Defendants had proposed a provision that was not contained in the Material Terms, namely, a confidentiality clause. Plaintiff also was not pleased with the "no admission of liability" clause that was tendered in the "final" agreement, although a "no admission" clause was included in the Material Terms.

10. Defendants' proposed addition of terms Plaintiff claims were not negotiated at the settlement conference so angered the Plaintiff that he has decided he now wants a trial, to expose

---

1975) (finding that the evidence showed the plaintiffs requested that their attorney enter into settlement negotiations and expressly authorized the specific terms of the settlement agreement).

[4]Defendants argued during the evidentiary hearing that the word, "Confidential," in the title of the Material Terms constitutes the parties' agreement to keep the settlement terms confidential. The Court disagrees. The word "Confidential" in the title of the document simply identifies the document as created pursuant to Fed. R. Evid. 408.

the wrongful deeds of the Defendants to the public.

**II.     Discussion**

The Tenth Circuit has determined that a trial court has the power to enforce summarily a settlement agreement entered into by the litigants while the litigation is pending before it. *Shoels v. Klebold,* 375 F.3d 1054, 1060 (10th Cir. 2004).[5] In doing so, "issues involving the formation and construction of a purported settlement agreement are resolved by applying state contract law." *Id.* (citation omitted). A settlement agreement is a contract which will be construed using ordinary principles of contract interpretation. *Anthony v. United States*, 987 F.2d 670, 673 (10th Cir. 1993).

Under Colorado law, the terms of a settlement agreement must be "clear, unambiguous, and capable of enforcement." *City and County of Denver v. Adolph Coors Co.,* 813 F. Supp. 1476, 1479 (D. Colo. 1993). To find that an agreement has been reached, it must appear that further negotiations are not required to work out important and essential terms. *Id.* The essential elements of a contract must include "mutual assent to an exchange, between competent parties, with regard to a certain subject matter, for legal consideration." *Industrial Prods. Int'l v. Emo Trans, Inc.,* 962 P.2d 983, 988 (Colo. App. 1997) (citation omitted). An offer is a manifestation by one party of a willingness to enter into a bargain, and an acceptance is a manifestation of assent to the terms of the offer. *Id.* (citing Restatement (Second) of Contracts §§ 24, 32 (1979)).

Several years ago the magistrate judges of this Court uniformly began reducing to writing settlement agreements reached during judicial settlement conferences (many of which were traditionally entered orally on the record at the successful conclusion of the conference), in response

---

[5] In a recent opinion, a judicial officer of this Court found that a federal court lacks jurisdiction over the enforcement of a settlement agreement for which the parties do not dispute the formation of a contract. *See Rocky Mountain Mortgage Specialists, Inc. v. First American Real Estate Info. Servs., Inc.*, Civil Action No. 07-cv-00815-MSK-MEH, 2008 WL 4293316, *2 (D. Colo. Sept. 16, 2008). In this case, however, the Plaintiff disputes the formation of the settlement agreement.

4

to the requirements set forth in *National Union Fire Ins. Co. of Pittsburgh v. Price*, 78 P.3d 1138 (Colo. App. 2003). In that case, the Colorado Court of Appeals, applying Colo. Rev. Stat. § 13-22-308(1), found that an agreement reached during mediation can be an enforceable court order only if, quoting from the statute, it is "reduced to writing and approved by the parties and their attorneys, if any."[6] In an abundance of caution, the undersigned and other magistrate judges began utilizing written settlement agreements at the conferences.

Only recently did the Colorado Supreme Court comment on the *Price* decision, finding that Section 308 did *not* abrogate the common law of contracts in the context of mediation proceedings and, contrary to the *Price* holding, "did not mandate a single method that must be followed for the formation of a binding agreement [in] mediation . . . ." *Yaekle v. Andrews*, 195 P.3d 1101, 1108 (Colo. 2008).[7] In *Yaekle*, the parties had signed a "basic terms of settlement" document provided by the mediator. Before a more comprehensive agreement was signed, the parties began renegotiating terms, ultimately reducing their negotiations to a proposed agreement. At the end of that renegotiation, the plaintiff refused to sign. Utilizing common law contractual principles, the court found not only that the "basic terms of settlement" were binding (a proposition with which neither party disagreed), but also that the renegotiated terms constituted a binding contract. Although the plaintiff had not signed any document containing the new terms, he had orally authorized his attorney to agree to them, which the Supreme Court found sufficient. *Id.* at 1111

---

[6] The statute has not been applied in federal matters involving settlement agreements; however, the decisions addressing the statute discuss and apply Colorado common law of contracts in the mediation context and are helpful for that purpose.

[7] The court noted that the "traditional tenets of common law contracts and settlement, which are sensitive to the requirements of justice, stand in stark contrast to those formulaic requirements imposed by an exclusive reading of section 308." *Id.* at 1107.

("Yaekle accepted the offer, as clearly shown through his counsel's representations to the court.").[8]

With these principles in mind, I recommend finding that an enforceable agreement was reached between the parties during the settlement conference in this case. At the conference, Defendants, through their authorized representative, clearly offered to settle this case for a specific monetary amount and a release of claims, including no admission of liability by any parties. Plaintiff and his counsel manifested an acceptance of that offer by counsel's signature on the Material Terms. The terms set forth in the Material Terms are clear and unambiguous. The Plaintiff testified at the evidentiary hearing not only that his counsel discussed settlement offers with him during the conference, but also that his counsel was authorized to act on his behalf during the conference and for purposes of settlement. Using the analysis in *Yaekle* and applying common law contract principles, a contract was formed here.

The Plaintiff argues that the final settlement agreement presented to him after the conference contains terms to which he did not agree, including a confidentiality clause and a clause reflecting Defendants' non-admission of liability; thus, according to Plaintiff, he has not made an agreement, and the case should proceed to trial. The Court disagrees. While the Plaintiff is correct that the parties did not agree at the settlement conference to include a confidentiality clause in the final settlement agreement (and, thus, confidentiality is not in the contract), he is incorrect regarding the inclusion of a "no admission of liability" clause; such term is clearly set forth in the Material Terms.

Defendants' zealous proposal of an additional, new settlement term subsequent to the execution of the Material Terms does not render the original settlement void. *See, e.g., Mitchell v. Estrada*, Civil Action No. 03-cv-00387-EWN-MJW, 2008 WL 544734, *2 (D. Colo. Feb. 26, 2008)

---

[8]The court also recognized that, in some instances, "the final and fully executed [settlement] agreement may be the only admissible evidence of a contract, and thus a court's determination as to whether or not a contract has been established at common law is determined from the one document alone." *Id.* at 1110.

(the court found that, as in this case, the terms entered on the record at settlement conference did not include agreement not to be bound by settlement until terms reduced to writing). By their execution of the Material Terms, both sides indicated that they understood and agreed to the terms set forth therein.

The only fact that gives the Court pause is that Plaintiff was not physically present at the conference itself and, thus, did not see the actual contract at the time of its execution, although his attorney spoke with him throughout the day and informed him of the terms. Having plaintiff prisoners appear by telephone is a necessary occurrence, as is reliance on their attorneys to act for and bind them to any agreement, if the magistrate judges of this Court hope to have success in scheduling and, then, settling prisoner cases. In the present case, the undersigned and counsel for both parties spent nearly five hours in the settlement conference, in addition to the time counsel spent drafting letters and the Court spent reading them. Authorizing a plaintiff prisoner to waste such resources by retaining an ability to abrogate a contract after it is executed would make defendants in these cases very reluctant to engage in settlement negotiations. At he same time, it would not serve the interests of justice or the rights of incarcerated persons if they could not receive judicially mediated settlement conferences as do the other civil litigants in this District. Plaintiff's counsel in this case is very competent and did an outstanding job of negotiating for their client. The terms of the agreement here are favorable to Plaintiff in comparison with similar cases negotiated by the undersigned.

While it is clear that the Plaintiff has had a change of heart well after the settlement conference, this should not alter the legal impact of his prior actions. "Ordinarily, a party who knowingly and voluntarily authorizes the settlement of [his] claims cannot avoid the terms of the settlement simply because [he] changes [his] mind." *Woods v. Denver Dep't of Revenue*, 45 F.3d

377, 378 (10th Cir. 1995). Here, the Court finds that the Plaintiff has simply changed his mind and no longer wishes to abide by the terms of the clear and unambiguous agreement.

Thus, the Court recommends that the District Court conclude that the Material Terms of Settlement Agreement contains the essential, clear and unambiguous terms of the agreement reached by the parties, and that a binding contract was reached under Colorado law. As such, the Court respectfully recommends that the District Court enforce the Material Terms of Settlement Agreement.

## III. Conclusion

Accordingly, for the reasons stated above, the Court RECOMMENDS that Defendants' Motion to Enforce Settlement Agreement [filed January 20, 2009; docket #61] be **granted**,[9] that the Material Terms of Settlement Agreement be enforced as a final, binding agreement to settle this case, and that the District Court dismiss this case with prejudice.

Dated at Denver, Colorado, this 13th day of February, 2009.

BY THE COURT:

s/Michael E. Hegarty
Michael E. Hegarty
United States Magistrate Judge

---

[9]Be advised that all parties shall have ten (10) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within ten (10) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).